Filed 12/13/21  In re Andie A. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ANDIE A. et al., Persons Coming Under the Juvenile Court Law. | B313312 |
| | (Los Angeles County Super. Ct. No. 21CCJP01052A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MARINA F., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry T. Truong, Juvenile Court Referee. Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

———————————————————

Marina F., the mother of now-12-year-old Andie A., 10-year-old Albert A., III (Albert), six-year-old Benjamin A. and 10-month-old Timothy A., appeals the juvenile court's jurisdiction finding and disposition order declaring the children dependents of the court after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b)(1).[1] Marina contends the court's jurisdiction finding as to her was not supported by substantial evidence and the court abused its discretion by ordering her to participate in parenting classes and individual counseling. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Petition*

In late January 2021 the Los Angeles County Department of Children and Family Services (Department) received a report Marina had tested positive for marijuana at the time of Timothy's birth. Timothy tested negative for marijuana at birth, but further testing on his umbilical cord blood was positive for marijuana. Marina admitted to the hospital social worker that she had smoked marijuana until she found out she was pregnant with Timothy, which was not until she was 24 weeks pregnant.

---

[1] Statutory references are to this code.

Marina explained she and the children's father, Albert A., Jr. (Father), smoked marijuana to alleviate pain. They did not smoke in the presence of the children. The hospital social worker stated Marina was bonding well with Timothy and was breastfeeding.

A Department social worker met with the family on January 25 and 26, 2021 at the motel where they were living. The family had previously been living with Marina's mother, Anna G. However, other minor relatives who were under the supervision of the Department lived in the home, and Marina and Father could not get approval from the Department to reside there due to Marina's and Father's criminal records. Accordingly, they moved out in the summer of 2020 and had been unhoused since.

Marina told the social worker she had smoked marijuana regularly but stopped when she learned she was pregnant with Timothy. She believed the positive test was due to marijuana still being in her system from her prior use approximately three months earlier. She said she was upset about the positive test and "never thought that it would be an issue." When she was smoking, Marina kept her pipe in a backpack away from the children. The social worker observed Marina was calm, rational and cooperative and appeared to be bonding appropriately with Timothy.

Father told the social worker he smoked marijuana every day for recreational purposes. He said he kept his pipe in the car and did not smoke in front of the children. He confirmed Marina had not smoked marijuana since learning she was pregnant with Timothy. Father stated he had been sober for 14 years and rarely drank alcohol. However, the social worker later learned

Father had been arrested in December 2020 for driving under the influence of alcohol. Marina, who was approximately eight months pregnant at the time, had been in the car with Father when they got into an altercation with another driver and police were called. Father and Marina maintained the police report was incorrect and Marina had been the one driving.

The social worker interviewed Andie and Albert, who both stated their parents argued and yelled but were not physically violent. Andie said Father smoked cigarettes, but she did not know what kind. He typically smoked in the car and would have the children "wait somewhere else." She said Marina also smoked but she did not know the last time her mother smoked. Albert said his parents did not do drugs but Father smoked cigarettes outside.

The social worker interviewed Anna on March 3, 2021. Anna stated Marina had used marijuana daily until learning she was pregnant with Timothy. Anna expressed her belief Father was abusive toward Marina based on marks and bruises Anna had seen on Marina's face. Marina later told the social worker the bruises were a result of her work as a dog groomer.

The parents agreed to on-demand drug testing by the Department. Marina failed to appear for a test on February 11, 2021 and tested positive for low levels of marijuana on February 17, 2021. Father tested positive for marijuana on February 11, 2021.

On March 5, 2021 the Department filed a nondetain petition pursuant to section 300, subdivisions (a) and (b)(1), alleging the parents had a history of violent altercations that endangered the children's physical health and safety and Marina had a history of substance abuse and was a current abuser of

marijuana, which interfered with her regular care and supervision of the children. In a separate count the Department alleged Timothy had tested positive for marijuana at birth as a result of unreasonable acts by Marina that placed Timothy at risk of physical harm. The Department also alleged Father had a history of substance abuse and was a current abuser of marijuana and alcohol, which rendered him incapable of providing regular care for the children.

At the March 10, 2021 hearing on the petition the court found Father was the presumed father of the children. The children were released to their parents under the temporary supervision of the Department. The Department was ordered to provide services, including drug testing for the parents.

2. *The Jurisdiction/Disposition Report*

The Department filed a jurisdiction/disposition report on April 23, 2021. The Department stated it had not yet been able to conduct additional interviews with the family but was concerned by the parents' "denial and gross lack of insight regarding alleged substance abuse."

An addendum report filed May 5, 2021 contained a summary of a follow-up interview with Marina. Marina again stated she had not smoked marijuana since learning she was pregnant with Timothy in November 2020. She believed her positive tests in late January and February 2021 were due to her previous marijuana use. She said the positive tests were "frustrating; I didn't expect him (Baby Timothy) to have it in his system. I thought it was enough time to be out of my system." Marina explained she would smoke marijuana when she got frustrated to help her calm down. She had not been smoking recently because she was breastfeeding. Marina stated the

5

longest period she had refrained from smoking was during her pregnancy with Andie. Marina also admitted she had a temper and was working on having more patience with Father and the children.

An addendum report filed June 3, 2021 contained a summary of a follow-up interview with Andie. Andie stated she knew marijuana was a drug and it looked like broccoli. When asked whether her parents smoked marijuana, she answered, "Yes, my mom not so much but my dad, kinda." Andie said she had seen Father smoke marijuana in the car, "They [the parents] ask us to get out of the car; they can see us. We are in a safe place, either by a tree or a rock. We mess with each other and play around." She said she had not seen her parents act strangely after smoking.

In the time since the detention hearing Father had tested positive for marijuana on March 18, 2021 and failed to appear for four tests between March 17, 2021 and May 14, 2021. Marina tested negative on March 18, 2021 and May 11, 2021 but failed to appear for three tests between April 26, 2021 and May 19, 2021.

3. *The Jurisdiction/Disposition Hearing*

At the continued jurisdiction hearing on June 3, 2021 Marina's counsel asked the court to dismiss the petition, arguing there was no evidence Marina had a substance abuse issue and, even if she was using marijuana, her positive tests showed extremely low levels in her system. Marina's counsel also argued there was no evidence any substance use interfered with her ability to care for the children. Father's counsel also requested the petition be dismissed.

Minors' counsel requested the court sustain the petition on the substance abuse counts, arguing the parents had been evasive and unwilling to be interviewed initially.

The court amended the petition by interlineation, removing the allegation Marina was a current abuser of marijuana, adding that her history of substance abuse was unresolved and including Timothy's positive toxicology result in the allegation regarding Marina's substance abuse. As amended, the allegation states, in part, that Marina "has an unresolved history of substance abuse including marijuana use. The child Timothy [A.] had a positive toxicology screen for marijuana at birth." The court dismissed the counts alleging domestic violence and the separate count concerning Timothy's positive toxicology test. The court sustained, as amended, the counts regarding Marina's and Father's substance abuse.

In explaining its ruling the court stated that, despite Marina's denials, her testing history did not support the conclusion she had stopped smoking marijuana. The court stated, "[Marina] has so many no shows that it is unclear to this court whether she did, in fact, stop and she is telling the truth to the social workers and this court."

Turning to disposition Marina's counsel objected to any parenting or counseling requirements and argued separate programs would be financially burdensome.

The juvenile court declared the children dependents of the court and ordered them released to their parents' custody under the supervision of the Department with family maintenance services. Marina was ordered to complete parenting classes and individual counseling, as well as on-demand or random drug testing.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)  In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ."  A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness.  (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a

8

finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re J.N.* (2021) 62 Cal.App.5th 767, 775; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *Kadence P.*, at p. 1384.)

Upon finding a child is a dependent of the juvenile court, the court "may direct any reasonable orders to the parents . . . as the court deems necessary and proper," including requiring participation in counseling, education and treatment programs. (§ 362, subd. (d); *In re Briana V.* (2015) 236 Cal.App.4th 297, 311 ["'[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly'"]; *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673 [same].)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings

9

and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

We review the court's orders directing a parent to participate in counseling, education and treatment programs for abuse of discretion. (See *In re Briana V., supra,* 236 Cal.App.4th at p. 311.)

### 2. *The Jurisdiction Finding Is Reviewable*

Marina does not challenge the juvenile court's finding regarding Father. That finding provides an independent basis for affirming dependency jurisdiction over the children regardless of any alleged error in the finding as to Marina. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; ""the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent""]; see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Briana V., supra*, 236 Cal.App.4th at pp. 310-311.) As a result, even if we were to strike the finding regarding Marina, the juvenile court would still be authorized to exercise jurisdiction over the children and to enter all reasonable orders necessary to protect them, including orders binding on Marina that address conduct not sustained in

10

the petition.  (*Briana V.*, at p. 311; *I.A.*, at p. 1492; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].)

Although acknowledging this general principle of justiciability, Marina asks us to exercise our discretion to reach the merits of her challenge to the jurisdiction finding, which serves as the basis for the disposition order also challenged by her on appeal.  We agree it is appropriate to do so in this case. (See *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re J.C.* (2014) 233 Cal.App.4th 1, 4; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

### 3. *Substantial Evidence Supports the Jurisdiction Finding as to Marina Under Section 300, Subdivision (b)(1)*

Marina does not deny her past frequent use of marijuana but contends the evidence did not establish she was currently abusing marijuana or her children were at risk of harm at the time of the jurisdiction hearing.

In arguing the Department failed to present evidence of her current substance abuse, Marina relies on her statements to social workers that she had ceased using marijuana in November 2020, which was corroborated by Father and Anna.  Further, she argues her positive drug test in February 2021 showed low levels of marijuana and her test in May 2021 was negative.

The positive drug tests in January and February 2021 followed by two negative tests in March and May 2021 could certainly support the inference Marina had ceased, or at least decreased, her marijuana usage once learning she was pregnant with Timothy.  However, the contrary inference is also reasonable—the presence of marijuana in Marina's system in late

11

January and February 2021, even at low levels, reasonably supports the inference Marina had not been truthful with the social workers and had used marijuana more recently than she admitted. Marina's four missed drug tests in February, April and May 2021 further support the inference she continued to use marijuana.[2] (See *In re E.A.* (2018) 24 Cal.App.5th 648, 657, fn. 6 ["[c]ommon sense suggests that a parent who consistently refuses to drug test without an adequate explanation does so because he or she knows the results will show substance abuse"]; *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186 [missed drug tests supported "reasonable inference . . . that father's marijuana use was more frequent than the one admitted instance"]; *In re Christopher R., supra,* 225 Cal.App.4th at p. 1217 [missed drug test "properly considered the equivalent of a positive test result"].)

Even if the evidence supported a finding of recent marijuana use, Marina argues, there was no evidence of

---

[2] Marina argues the court improperly relied on her four missed drug tests because she "was not obligated to participate in drug testing prior to jurisdiction having been assumed." This argument is unpersuasive. It is true that "before the juvenile court takes jurisdiction over a child by finding [him or her] to be a person described by section 300, the court may not order a parent to cooperate with the social services agency, engage in services, or submit to alcohol or drug testing." "A parent's participation in services, whether before jurisdiction and disposition or after, is always voluntary." (*In re E.E.* (2020) 49 Cal.App.5th 195, 208, 209.) However, "[t]hat is not to say there are no consequences for failing to cooperate in the investigation or participate in services. One consequence is that those failures 'can be used later as evidence in a review hearing or a hearing on a [section 300] petition.'" (*Id.* at p. 209.)

substance abuse.[3]  Marina is correct that a parent's use of drugs or alcohol, standing alone, is insufficient to support dependency

[3]    In *In Drake M.* (2012) 211 Cal.App.4th 754, 766, upon which Marina primarily relies, Division Three of this court held, for purposes of section 300, subdivision (b), a finding of substance abuse "must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR."  After the decision in *Drake M.* the DSM-IV-TR's definition of "substance abuse" was replaced in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) by a more broadly defined classification of "substance use disorders," which combines substance abuse and dependence.  (See *In re Christopher R., supra,* 225 Cal.App.4th at p. 1218, fn. 6.)  "DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use.  The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder." (*Ibid.*)  As we held in *Christopher R.*, "We recognize the *Drake M.* formulation as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b).  But it is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept [the] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR [or DSM-5] categories can be found to be a current substance abuser." (*Christopher R.*, at p. 1218.)

jurisdiction under section 300, subdivision (b). (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 ["[i]t is undisputed that a parent's use of marijuana '*without more*,' does not bring a minor within the jurisdiction of the dependency court"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 ["it is true that the mere use of marijuana by a parent will not support a finding of risk to minors"].) Here, however, substantial evidence supported the juvenile court's finding Marina's marijuana use rose to the level of substance abuse. Marina admitted to smoking marijuana regularly over the last decade, and her mother stated Marina smoked daily. The longest Marina had abstained from marijuana use was when she was pregnant with Andie 12 years earlier. Marina gave shifting explanations for her use, telling one social worker it was for pain management and another it was to calm her when she was frustrated. Marina did not appear to comprehend the risks associated with her marijuana use during pregnancy and indicated she continued to abstain only because she was breastfeeding. Even when under Department scrutiny she continued to test positive and failed to appear for testing. This lack of insight into the effects of her marijuana use and apparent inability to curtail her use reasonably supported a finding of substance abuse.

Marina additionally argues there was insufficient evidence to establish her use of marijuana interfered with her ability to properly care for the children. Specifically, Marina argues there had been no allegation of harm to the children and they appeared to be happy, healthy and developmentally appropriate. Marina's argument ignores that, with respect to a child of "tender years," "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting

in a substantial risk of harm.'" (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219; accord, *In re Kadence P.*, *supra*, 241 Cal.App.4th at p. 1385.) Because Benjamin and Timothy were six years old or younger at the time of the jurisdiction hearing, the finding of substance abuse effectively created a presumption that Marina was unable to provide appropriate care for them—a presumption reinforced by evidence Marina and Father smoked marijuana in the car while their young children played "by a tree or a rock." Marina contends the "undisputed fact that whenever parents did smoke, it was outside the children's presence, in their car" exhibited a "judicious approach to marijuana use" that "removed any risk" of the children accidentally ingesting marijuana or being exposed to second hand smoke. This argument fails to acknowledge that the children were left without a sober caretaker and, unless the car were parked outside where the family lived, the children would have had to re-enter the car after it had been filled with marijuana smoke and would have been driven away by a parent who was under the influence of marijuana. This evidence was a sufficient link between Marina's marijuana abuse and the risk of harm to the children to support the jurisdiction finding. (See *Kadence P.*, at pp. 1384-1385 [mother's continuous substance abuse and attempts to conceal it placed infant daughter at substantial risk of harm]; *Christopher R.*, at pp. 1219-1220 [father's persistent drug use rendered him incapable of providing regular care for infant child].)

4. *The Disposition Order as to Marina Was Proper*

Marina contends the juvenile court abused its discretion in ordering her to complete both parenting classes and individual counseling, arguing she should have been allowed to address any

15

parenting issues as part of her individual counseling. Marina argues the dual requirement is "unduly burdensome for a mother of four young children, navigating both homelessness and a global pandemic."

"Juvenile courts should be mindful of the burdens their disposition orders impose on parents already grappling with difficult conditions and circumstances. However, the paramount concern always must be the child's best interests, and we cannot reverse a disposition order reasonably fashioned to eliminate the conditions that led to dependency jurisdiction, no matter how burdensome its requirements may seem from the parent's perspective." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071-1072.)

Here, given Marina's statement she smoked marijuana to deal with her frustration, individual counseling was a reasonable requirement, especially given Marina's circumstances. The requirement that parenting classes be completed separately reasonably ensures sufficient attention can be paid to Marina's ability to deal with her frustration and any anger issues rather than combine the services and risk diverting attention from individual counseling to deal with parenting issues. Far from being arbitrary or capricious, the juvenile court's order was reasonably related to the care and protection of the children.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition order are affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.　　　　　　　　　FEUER, J.

16